**John W. VICORY, Plaintiff-Appellee,**

v.

**Robert R. WALTON, Sheriff of Butler County; and John F. Holcomb, Butler County Prosecutor, Defendants-Appellants.**

**No. 82–3828.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1983.

Decided Nov. 30, 1983.

Rehearing En Banc Denied March 28, 1984.

Victoria Daiker, Carl D. Ferris, argued, Hamilton, Ohio, for defendants-appellants.

John D. Smith, argued, Franklin, Ohio, for plaintiff-appellee.

Before MERRITT and KENNEDY, Circuit Judges, and BERTELSMAN,* District Judge.

MERRITT, Circuit Judge.

The primary question before us in this damage suit under 42 U.S.C. § 1983 (1976) for deprivation of property under color of state law without due process, is whether plaintiff must plead and prove the absence

* The Honorable William O. Bertelsman, Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

of adequate state damage remedies as an element of the constitutional tort. We conclude under the authority of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that in section 1983 damage suits for deprivation of property without procedural due process the plaintiff has the burden of pleading and proving the inadequacy of state processes, including state damage remedies to redress the claimed wrong. The plaintiff in this case has failed to carry this burden. The judgment of the court below awarding damages to plaintiff is therefore reversed.

## I.

Defendants Robert R. Walton and John F. Holcomb, the sheriff and prosecutor of Butler County, Ohio, appeal an order of the District Court granting a summary judgment against them in a section 1983 action for damages resulting from an alleged violation of civil rights guaranteed by the fourth, fifth and fourteenth amendments to the Constitution.

Plaintiff John W. Vicory owns a mobile home trailer in Overpeck, Ohio. On October 1, 1979, three persons were shot in this trailer which had been rented from Vicory by one of the murder victims.

At the direction of prosecuting attorney Holcomb, and with the consent of plaintiff, Sheriff Walton seized the trailer on October 2, 1979, for the purpose of investigating the triple homicide. The sheriff and prosecutor conducted an investigation at the trailer, which the coroner, Garrett J. Boone, had ordered sealed in order to preserve the scene for evidentiary purposes in case the trial judge, in his discretion, should order a view of it in the criminal trial.

After extended criminal proceedings against Richard E. Saylor, who entered pleas of not guilty and not guilty by reason of insanity to three counts of murder, the case was concluded on March 10, 1980, when the accused entered pleas of guilty to all three counts of the indictment. Two weeks later on March 24, 1980, Prosecutor Holcomb directed Sheriff Walton to return the trailer to Vicory's possession.

On October 16, 1980, plaintiff Vicory commenced this section 1983 suit against Sheriff Walton, alleging that he had been deprived of his property, the trailer, under color of state law, without just compensation.[1] On May 25, 1982, plaintiff amended his complaint to add Prosecutor Holcomb as a defendant.

On October 27, 1982, the District Judge issued an order granting plaintiff's motion for summary judgment and awarding him a judgment for $850, the stipulated lost rental value of the trailer, plus reasonable attorneys' fees. The District Court held that the prosecutor was not entitled to absolute immunity, but only to a good faith immunity which on the facts of this case could not be invoked. Further, the court held that the retention of plaintiff's trailer without compensation amounted to a violation of due process under the fifth amendment.[2]

## II.

In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that the negligent deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong. *Parratt* held that in order to state a claim for relief in federal court under section 1983, a plaintiff must show that available state procedures were not adequate to com-

---

**1.** Although plaintiff's counsel stated before this Court in oral argument that plaintiff had made demand on defendants for return of the trailer soon after it was seized, we find no evidence in the record of a demand or any other formal effort made under state law to regain the property.

**2.** The District Court made no direct reference to the sheriff's liability or immunity, perhaps

because the sheriff did not raise the immunity issue as an affirmative defense. It must be presumed, however, that the District Judge intended the sheriff and the prosecutor to be jointly liable. Because we find that plaintiff has failed to show that he was denied the procedural due process § 1983 protects, it is unnecessary to reach the issue of the defendants' immunities.

pensate him for the deprivation of his property.

■ For the purposes of due process, retention of plaintiff Vicory's trailer in this case is analogous to the retention of the prisoner's hobby materials in *Parratt*. In both cases, a law enforcement official under color of state law has rightfully acquired, but perhaps wrongfully retained, the property of a citizen; and in both cases, state law provides immediate corrective process in its courts. In *Parratt*, Nebraska law provided the prisoner with a means to redress the loss of the hobby materials. *See* Neb.Rev.Stat. § 81–8,209 (1976). In this case, plaintiff can resort to an action in an Ohio court for forcible entry and detainer. *See* Ohio Rev.Code Ann. §§ 1923.01–.14 (Baldwin 1977). Moreover, the plaintiff is entitled to a jury trial under this statute. *See id.* § 1923.10. *See also Cuyahoga Metropolitan Housing Authority v. Jackson,* 67 Ohio St.2d 129, 423 N.E.2d 177 (1981) (purpose of forcible entry and detainer statute is to provide summary, extraordinary and speedy method for recovery of possession of property). Although these state remedies may not provide the prisoner in *Parratt* or the plaintiff here with all the relief which might have been available if they could have proceeded under section 1983, the remedies could have fully compensated them for the property loss sustained, and are therefore sufficient to satisfy the requirements of due process.

There is a further significant similarity between this case and *Parratt*. The *Parratt* Court states that there is an important difference between a challenge to an established state procedure as lacking in due process—*see, e.g., Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (invalidating Florida garnishment proce-

dure requiring a hearing only after the repossession)—and a property damage claim arising out of the alleged misconduct of state officers. In the latter case, as here, "the state action is not necessarily complete," because state law provides a means for the plaintiff to be made whole for the loss of property. *See Parratt,* 451 U.S. at 542, 101 S.Ct. at 1916 (quoting with approval now-Justice Stevens' analysis in *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir.1975), *modified en banc,* 545 F.2d 565 (1976), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978)); *cf. Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (distinguishing *Parratt,* the Court held that availability of post-termination tort action does not supply due process when "[i]t is the state system itself that destroys a complainant's property interest" with an established state procedure).

Allowing the plaintiff in this case to invoke section 1983 in the absence of a showing that state remedies are deficient would "make of the fourteenth amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917 (*quoting Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). It is difficult indeed to perceive any logical stopping place to a line of reasoning that would almost necessarily result in turning every alleged property deprivation resulting from a criminal investigation or prosecution in which the property of citizens is retained by the state for evidentiary purposes into a section 1983 action.[3]

Plaintiff attempts to distinguish *Parratt* on the basis of intent. He argues that the conduct in refusing to return the property

---

**3.** The recent case of *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), is not to the contrary. In that case, the plaintiff alleged that she had been deprived of employment opportunities at Florida International University solely on the basis of race and sex, in violation of § 1983. The Supreme Court held that exhaustion of state administrative remedies is not a prerequisite to an action under 42 U.S.C. § 1983. *Patsy*

does not, however, stand for the general proposition that a person seeking to state a claim under § 1983 *for a deprivation of property without procedural due process* need not plead and prove that post-deprivation procedures and remedies available under state law were deficient. *Patsy* was concerned with the issue of exhaustion, not with what is necessary to state a procedural due process claim under § 1983.

was intentional, rather than negligent, as in *Parratt.* Courts of Appeal are divided on whether the Supreme Court will extend the *Parratt* requirement of a showing of inadequate state remedies to cases involving the deprivation of liberty interests arising under the first and fourth through the eighth amendments or to intentional property deprivations. *See, e.g., Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1352 (9th Cir.1981) (holding that under *Parratt,* plaintiff must show that post-deprivation tort remedies available under Arizona law were deficient in order to state section 1983 claim for intentional assault and battery), *aff'd on other grounds sub nom. Kush v. Rutledge,* —— U.S. ——, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); *Palmer v. Hudson,* 697 F.2d 1220 (4th Cir.1983) (*Parratt* applies to intentional deprivations of property but not to substantive violation of privacy rights), *cert. granted,* —— U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983); *Vail v. Board of Education of Paris Union,* 706 F.2d 1435 (7th Cir.1983) (section 1983 extends to protect property interest of employee with implied contract of employment, and since Supreme Court has refused to expand *Parratt* beyond "a tortious loss of property or result of a random and unauthorized act by a state employee," *Parratt* rationale does not require employee to allege inadequacy of state law remedies), *cert. granted,* —— U.S. ——, 104 S.Ct. 66, 78 L.Ed.2d 81 (1983); Friedman, Parratt v. Taylor: *Opening and Closing the Door on Section 1983,* 9 HAS-TINGS CONST.L.Q. 545 (1982). *See also Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (no violation of procedural due process in school paddling case when plaintiff makes no showing that state remedies are inadequate).

■ As we read *Parratt,* the principle being applied does not turn on the question of whether the claimed constitutional tort affecting property is caused by intentional conduct or negligent conduct or is based on strict liability. Nor does it matter whether the writ at common law would be in detinue (action for wrongful detention of a chattel by a bailor), trespass *de bonis asportatis* (action for carrying away plaintiff's chattels), trespass on the case (roughly speaking, an action for negligence) or a motion in a criminal case for return of property held as evidence. The reasoning of *Parratt* appears to extend at least to all section 1983 cases claiming a procedural due process injury to a property interest without regard to whether at common law a plaintiff would have sued in tort or contract and would have based his action on intent, negligence or strict liability.

Policy considerations do not require a federal hearing in procedural due process cases that can be corrected in state court. So long as a state's damage remedies are not shown to be inadequate in theory or practice—that is, so long as there is no systemic problem with the state's corrective process—we see no purpose to be served by further complicating[4] section 1983 liability for damages in property cases by distinctions grounded in different types of intent, negligence and strict liability. After all, we are interpreting a general constitutional provision which forbids state deprivations of "property without due process of law," not the Internal Revenue or some other statutory code requiring fine property law distinctions.

Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials. Rather, the statute is a remedy for only those wrongs which offend the Constitution's prohibition against property deprivations without procedural due process. Thus we hold

---

4. Section 1983 damage suits take up a large part of the time of the federal courts and have given birth to a confusing maze of complex rules since *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), expanded liability to unauthorized acts of state officials twenty years ago. *See* Whiteman, *Constitutional Torts,* 79 MICH.L.REV. 5, 25 (1980) (noting that "every expansion of constitutional rights [through section 1983] will increase the case load of already overburdened federal courts," which "dilutes the ability of federal courts to defend our most significant rights" and "displaces state lawmaking authority by diverting decisionmaking to the federal courts").

that in section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong. In the instant case the plaintiff has neither alleged nor shown any significant deficiency in the state's remedies.

Accordingly, the judgment of the District Court is reversed.

BERTELSMAN, District Judge, concurring.

Reluctantly, I find myself unable to endorse the majority opinion, both because I feel that the doctrine of prosecutorial immunity is a sufficient and more narrow basis on which to dispose of this case and because I respectfully disagree with the majority's conclusion that the doctrine of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), is applicable to the facts herein. Also, I find myself in disagreement with the majority's analysis of *Parratt.*

The defendant prosecutor was clearly absolutely immune under the doctrine of *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), since all of his acts were well within the scope of his duties in prosecuting a criminal case. The defendant sheriff, having performed a ministerial function as directed by the prosecutor, shares in that immunity. *See Timson v. Wright,* 532 F.2d 552, 553 (6th Cir.1976) and cases cited therein; *Denman v. Leedy,* 479 F.2d 1097, 1098 (6th Cir.1973).

The fact that the sheriff failed to plead the affirmative defense of immunity is not fatal, since in a situation involving joint defenses one defendant can take advantage of the defenses asserted by his co-defendant. *See Willis v. Fournier,* 418 F.Supp. 265, 267 (M.D.Ga.), aff'd, 537 F.2d 1142 (5th Cir.1976); *Capitol City Manor, Inc. v. Culberson,* 1 Ark.App. 137, 613 S.W.2d 835, 837 (1981); *Jackson v. District of Columbia,* 412

A.2d 948, 951 (D.C.App.1980); *Haddad v. Louisville Gas & Electric Company,* 449 S.W.2d 916, 919–920 (Ky.1969); *Kooper v. King,* 195 Cal.App.2d 621, 15 Cal.Rptr. 848, 852 (1961); 78 A.L.R. 938, 939.

Therefore, I would reverse with directions to enter judgment for both defendants on the basis of immunity alone.

I am constrained to conclude that *Parratt, supra,* is not applicable to the situation here presented. First of all, this case does not involve merely a denial of procedural due process, as stated by the majority, but also a denial of just compensation for the taking of private property for public use. There is abundant authority that such a cause of action is cognizable under § 1983. *Lake County Estates v. Tahoe Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Lenoir v. Porters Creek Watershed District,* 586 F.2d 1081 (6th Cir. 1978); *Gordon v. Warren,* 579 F.2d 386 (6th Cir.1978).

Secondly, the Supreme Court of the United States has expressly limited the scope of *Parratt* to cases involving a property loss resulting from a " 'random and unauthorized act by a state employee ... not a result of some established state procedure.' 451 U.S. at 541 [101 S.Ct. at 1916]." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (quoting from *Parratt*). The Supreme Court held in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960) that the existence of an adequate state remedy was not a bar to the pursuit of a § 1983 action. *Parratt* narrowed this somewhat, but not to the extent held by the majority opinion herein. I agree with the view of the Seventh Circuit that, in the light of *Logan,* *Parratt* cannot be extended to cases involving a loss of a property right as a result of intentional state action. *Vail v. Board of Education of Paris Union School District No. 95,* 706 F.2d 1435, 1440–1441 (7th Cir. 1983).

As I stated at the outset, it is with some reluctance that I find myself at odds with the majority concerning its interpretation

of *Parratt.* I am in great sympathy with the desire of the majority to find some interpretation of § 1983 that will limit frivolous and *de minimis* actions brought under this statute, which in my opinion is employed in many situations never foreseen or intended by its framers. The statute was primarily intended to provide redress to victims of racial animosity, where state remedies were inadequate either *de jure* or *de facto. See Monroe v. Pape, supra.* I do not believe that the statute was ever intended in the absence of invidious discrimination as a remedy for disgruntled teachers or other public employees or for losses of property through state action.

Where I have felt myself at liberty to do so within the limits imposed by *stare decisis,* I have tried to confine the statute to what I believe to be its proper limits. *See Reichert v. Draud,* 511 F.Supp. 679 (E.D.Ky. 1981), aff'd, 701 F.2d 1168 (6th Cir.1983); *Stratford v. State-House, Inc.,* 542 F.Supp. 1008 (E.D.Ky.1982), *aff'd,* No. 82–5519 (6th Cir. October 27, 1983) (unpublished).

Therefore, my reluctance in disagreeing with the majority results from my agreement with its goals. Would that the law were as it says. However, for the reasons set forth above, I do not believe that it is, nor that we are at liberty under controlling Supreme Court precedents to expand *Parratt* beyond losses of property due to unintentional acts. A narrowing of the scope of § 1983 to practicable limits may require a statutory amendment.