Michael HARLEY, Plaintiff,

v.

Donald CARMAN, et al., Defendants.

Civ. A. No. C83–4792Y.

United States District Court,
N.D. Ohio, E.D.

May 24, 1984.

As Amended July 2, 1984.

William M. Fumich, Jr., Cleveland, Oh., for plaintiff.

Richard W. Ross, Asst. Atty. Gen., Federal Litigation Section, Columbus, Oh., for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Michael Harley brings this civil rights action under 42 U.S.C. § 1983, seeking damages from three Ohio State Highway Patrolmen. Harley alleges that the officers, individually and in their official capacities, deprived him of due process and equal protection by failing to provide him with medical treatment while he was in state custody in November of 1981. The defendants, represented by the State of Ohio, contend that the Eleventh Amendment and recent limitations on § 1983 actions require dismissal of Harley's complaint. Finding no bar to this damage action against the state officials in their individual capacity, this Court denies their Motion.

Jurisdiction rests on 28 U.S.C. § 1331 and 1343(3) and (4).

### I.

The allegations of the complaint must be taken as true and are to be construed in favor of the plaintiff. *Westlake*

*v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). The complaint is only to be dismissed if the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Michael Harley's allegations follow.

Harley was born in 1965. In late 1981, he resided at the Wymer Group Home for Boys, a state-licensed facility in Lisbon, Ohio. On November 28, 1981, he attended a group outing at the Waterford Park Racetrack. He and another resident of the Wymer Group Home, Kevin Ward, became separated from the group and eventually obtained a ride home with an adult female motorist.

After observing her erratic driving, the defendants—patrolmen Donald Carman, Donald Kubas, and Paul Newburn—stopped the motorist in Lisbon, then arrested her for possession and operation of a stolen automobile. Harley and Ward were arrested and taken into custody for being passengers in a stolen car. While in custody, Harley sustained a fracture of the cervical spine and quadraplegia. Harley informed the defendants of extreme neck pain, numb legs, and inability to move his extremities and asked for immediate treatment. Although he appeared injured to the defendants, they deliberately denied him medical care.

Harley seeks $10 million in damages, together with interest, costs, and attorney's fees.

## II.

The defendants' first argument is that the Eleventh Amendment deprives a federal court of jurisdiction over claims asserted against them in their official capacities, because "[a]ny award of damages against them in their official capacity would obvi-ously come from the state treasury." Motion to Dismiss at 4.

The history of the Eleventh Amendment and the mysterious body of doctrine promulgated under it has been reviewed at great length by courts and scholars, most recently in *Pennhurst State School v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("*Pennhurst*"). Passed in response to *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), in which the Supreme Court assumed original jurisdiction over a suit brought by a citizen of South Carolina against the State of Georgia, the amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Its language was later read to bar federal court jurisdiction over suits brought by a citizen against his own state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). A state may, by unequivocal language, waive its Eleventh Amendment immunity, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), but no such waiver is to be inferred from a state's waiver of sovereign immunity in its own courts. *Pennhurst*, 104 S.Ct. at 907 n. 9; *Florida Department of Health v. Florida Nursing Home Ass'n.*, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981). Ohio's waiver statute, Ohio Rev.Code § 2743.02(A)(1),[1] is not a waiver of its Eleventh Amendment immunity. *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir.1982) ("there has been no constitutional statutory waiver of Ohio's Eleventh Amendment rights").

---

1. The statute provides:

    (A)(1) The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, except that the deter-mination of liability is subject to the limitations set forth in this chapter and except as provided in division (A)(2) of this section. To the extent that the state has previously consented to be sued, this chapter has no applicability.

■ Congress, in enacting legislation pursuant to section five of the Fourteenth Amendment, also may abrogate Eleventh Amendment immunity. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* subjects state officials to suits in federal court). That argument is unavailable to Harley, however, since *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), explicitly held that § 1983 did not override state officials' Eleventh Amendment immunity for acts taken in their official capacity.

However, because Harley seeks damages from the defendants in their individual as well as their official capacities, neither the limited scope of the Ohio waiver statute nor *Quern* conclusively resolves matters in favor of the defendants. Harley's claim is predicated on the common law principle that an official who acts unlawfully may not claim the immunity of its sovereign if sued in his own name, a principle applied to avoid the bar of the Eleventh Amendment as early as *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824) and articulated with lasting effect in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which held that a federal court could enjoin a state official from enforcing an unconstitutional state statute.[2]

> ... There is a well-recognized irony in *Ex parte Young;* unconstitutional conduct by a state officer may be "state action" for purposes of the Fourteenth Amendment yet not attributable to the State for purposes of the Eleventh. Nevertheless, the rule of *Ex parte Young* is one of the cornerstones of the Court's Eleventh Amendment jurisprudence.

*Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 685, 102 S.Ct. 3304, 3315, 73 L.Ed.2d 1057 (1982) (*"Treasure Salvors"*); *Home Telephone &*

*Telegraph Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913).

*Ex parte Young* provides the basis for declaratory and injunctive relief against state officials. It also supports the award of damages against individual state officials. In *Scheuer v. Rhodes,* 416 U.S. 232, 233, 94 S.Ct. 1683, 1685, 40 L.Ed.2d 90 (1974), the Court rejected arguments that the Eleventh Amendment provided the governor of Ohio and other state officials absolute immunity from a § 1983 suit arising out of the 1970 shootings at Kent State University.

> *Ex parte Young* ... involved a question of the federal courts' injunctive power, not, as here, a claim for monetary damages. While it is clear that the doctrine of *Ex parte Young* is no aid to a plaintiff seeking damages from the public treasury, ... damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.... In some situations a damage remedy can be as effective a redress for the infringement of a constitutional right as injunctive relief might be in another.
>
> ... It can hardly be argued, at this late date, that under no circumstances can the officers of state government be subject to liability under this statute [§ 1983] ....
>
> Since [§ 1983] included within its scope the "'[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law,'" ... government officials, as a class, could not be totally exempt, by virtue of absolute immunity, from liability under its terms.

416 U.S. at 237–38, 243, 94 S.Ct. at 1686–87, 1690, 40 L.Ed.2d 90 (citation omitted). *See also In re Tyler,* 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689 (1893).

Earlier in the same term, the Court had decided *Edelman v. Jordan,* holding that

---

**2.** *See* the excellent discussion in *American Civil Liberties Union of Mississippi v. Finch,* 638 F.2d 1336, 1340–42 (5th Cir.1981).

the Eleventh Amendment barred a federal court from awarding plaintiffs retroactive welfare benefits as compensation for wrongful denial of benefits by state officials prior to the entry of the court's order. *Scheuer v. Rhodes* recognized that "the [Eleventh] amendment bars suits not only against the State when it is the named party but also when it is the party in fact. *Edelman v. Jordan....*" 416 U.S. at 237, 94 S.Ct. at 1687. But it refused to apply *Edelman* to bar a suit "seeking to impose individual and personal liability on the *named defendants* for ... a deprivation of federal rights by these defendants under color of state law." *Id.*

Consequently, while *Edelman* bars § 1983 actions against the defendants for actions in their official capacity, *Scheuer* permits such actions against them in their individual capacity. The Court has adhered to this distinction in recent cases, particularly in *Treasure Salvors*, where it again observed that "conduct undertaken without any authority whatever is also not entitled to Eleventh Amendment immunity." 458 U.S. at 697 (opinion of Stevens, J.).

*Pennhurst* explored the murky question of when a suit brought against a state official is in fact a suit against the state itself, concluding:

> ... Although prior decisions of this Court have not been entirely consistent on this issue, certain principles are well-established. The Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 [65 S.Ct. 347, 350, 89 L.Ed. 389] ... (1945) ... Thus, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon*, 373 U.S. 57, 58 [83 S.Ct. 1052, 10 L.Ed.2d 191] ... (1963) (per curiam).

104 S.Ct. at 908 (citations and footnote omitted). But nowhere in its "voyage into the sea of undisciplined lawmaking" did the Court alter the fundamental formulation expressed above. *Id.* at 944, 932 & n. 26. (Stevens, J., dissenting).

The defendants contend that all claims against them in their official capacity must be dismissed, and that since they were at all times acting as state officials, the claims against them as individuals are in fact claims against the state and must be dismissed as well. It is clear that the former statement is correct and the latter is not. The state cannot bestow its immunity on its officers to bar § 1983 actions merely by choosing to defend them (as Ohio has done here), *Treasure Salvors*, 458 U.S. at 691–92, 102 S.Ct. at 3318–3319, or by agreeing to pay their damages. These state police officers are therefore entitled to no more than the good faith immunity provided to local police. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Their "state action" is not necessarily "action of the State"; the claims against them in their individual capacity are actionable under § 1983.

### III.

The defendants also argue that Harley has failed to state a claim upon which relief can be granted and that his case must be dismissed under Fed.R.Civ.P. 12(b)(6). They argue that he has only alleged that they committed a common law tort, which is not actionable under § 1983. But the Supreme Court and the Sixth Circuit have repeatedly held that the Eighth Amendment's prohibition against "cruel and unusual punishments", made applicable to the States by the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), guarantees federal and state prisoners a certain degree of medical care while incarcerated, so that "deliberate indifference" to medical needs provides a cause of action under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–291, 50 L.Ed.2d 251 (1976); *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir.1983); *Westlake v. Lucas*, 537 F.2d at 860; *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir.1972). Nothing in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct.

1908, 68 L.Ed.2d 420 (1981) (negligent deprivation of prisoner's property does not violate due process if adequate state remedies are available to redress the wrong), *Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983) (extending *Parratt* to all § 1983 damage actions claiming deprivation of property without due process of law), or *Campbell v. Shearer,* 732 F.2d 531 (6th Cir.1984) (applying *Vicory* ) impinges upon this Eighth and Fourteenth Amendment right. However, to clarify the nature of the Eighth Amendment right asserted, Harley is directed to file an Amended Complaint within ten (10) days. The defendants shall then file an answer and the parties shall proceed with discovery.

The Motion to Dismiss is denied.

IT IS SO ORDERED.