861 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gwendolyn WHITE and Lang Berkley, Plaintiffs-Appellants,
v.
CLEVELAND BOARD OF EDUCATION and Alfred D. Tutela,
Defendants-Appellees.
 No. 87-4019.
 United States Court of Appeals, Sixth Circuit.
 Nov. 3, 1988.
 
 Before KEITH, RALPH B. GUY, Jr. and RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs appeal the order of the district court, the Honorable Samuel Bell, United States District Judge for the Northern District of Ohio, dismissing their 42 U.S.C. Sec. 1983 claim. Plaintiffs contend that the Cleveland Board of Education ("Board") wrongfully terminated them and that due process requirements entitled them to review by the Cleveland Civil Service Commission on appeal; that they were denied procedural due process in violation of the fourteenth amendment because they were not given a full evidentiary hearing either prior to or subsequent to their termination; and that as tenured employees they were not required to exhaust their contractual grievance procedures contained in the collective bargaining agreement.
 
 
 2
 We find that the grievance procedures contained in the collective bargaining agreement for disputes regarding the meaning and application of that agreement adequately satisfy procedural due process requirements. We therefore AFFIRM the order of the district court.
 
 I.
 
 3
 Plaintiffs are former school bus drivers classified as civil service employees under Ohio law and could only be terminated for "cause." Both plaintiffs were members of the International Brotherhood of Teamsters, Truck Driver's Union, Local 407 and were covered by the Collective Bargaining Agreement ("Agreement") negotiated between the Union and the Board.
 
 
 4
 Plaintiff White was terminated on August 13, 1985, for failing to maintain a valid driver's license in addition to failing to notify her employer that her license had been suspended. Plaintiff Berkely was discharged on July 12, 1985, for excessive absenteeism and tardiness. Plaintiffs do not contest the reasons for their termination but rather challenge the manner in which they were discharged.
 
 
 5
 The Union negotiated a three-year contract with the Board which became effective on July 1, 1984. The Agreement was therefore in effect at the time of plaintiffs' terminations. Article XII of the Agreement describes the four-step grievance procedure and provides:
 
 
 6
 Step 1. An aggrieved employee, and/or his/her Union steward, shall inform the Depot Manager, in writing, of the grievance, and discuss the matter with the Depot Manager. The Depot Manager shall have five (5) working days in which to adjust the matter.
 
 
 7
 Step 2. If the matter is not mutually resolved between the parties, then the written grievance shall be presented by the Union within five (5) additional working days to the hearing officer (as designated by the Board). A meeting shall be held within ten (10) working days (or a mutually agreed upon time) after presentation of the written grievance between the hearing officer and Union business representative and/or steward or aggrieved employee to discuss the grievance. If no agreement is reached between the parties, the Union can, within ten (10) working days after a decision has been rendered, refer the grievance to step 3.
 
 
 8
 Step 3. After Steps 1 and 2 of this section have been exhausted, such disputes shall be submitted to a grievance panel. This panel shall consist of three (3) representatives of the Board and three (3) officers of the Union. This panel will meet not less than once a month at a mutually agreeable time and place and such grievances shall be submitted in writing and shall be heard in accordance with the rules established by this panel. A decision rendered by the panel shall be final and binding. In the event the panel is equally divided in their opinion and there exists a deadlock as to the finding in the matter, the Union shall have the sole and exclusive right, within thirty (30) days, to submit the matter to arbitration.
 
 
 9
 The fourth and final step of the grievance procedure included in the Agreement is final and binding arbitration designed to resolve disputes regarding the meaning and application of the Agreement.
 
 
 10
 Following their termination, plaintiffs White and Berkley were represented by the Union. Since the Union was unable to successfully resolve the matter through steps one and two, the Union submitted the grievances to a panel of three Board members and three Union representatives. The grievance panel identified in step 3 of the Article XII deadlocked on resolution of both grievances. The Union failed to submit either claim to final and binding arbitration as provided for in the Agreement. Plaintiffs then brought this action against the Board alleging they were denied procedural due process in violation of the fourteenth amendment of the Constitution. At no time was the Union sued for failing to pursue plaintiffs' claims to arbitration nor was the Union named as a defendant in the current action.
 
 II.
 
 11
 Plaintiffs argue that they were not required to exhaust their contractual grievance procedures since such a restriction would give union employees less protection than non-union employees. We disagree. These plaintiffs have no more or no less protection than non-union employees. Instead, as beneficiaries of a collective bargaining agreement they have access to a different procedure for challenging their terminations. As members of the Union, plaintiffs ratified the Agreement and the grievance procedure contained within the bargained for agreement. Accordingly, if plaintiffs were allowed to take advantage of both this civil service remedy and the Agreement's grievance procedure or to choose between the two, they would be granted more protection than their non-union counterparts. Moreover, we find plaintiffs were afforded adequate procedures and remedies under the Collective Bargaining Agreement.
 
 III.
 
 12
 Plaintiffs argue that their discharges were not controlled by the Agreement but rather the Employee Handbook and that they therefore had the option of relying on the Ohio Civil Service laws codified at Ohio Revised Code Sec. 124.34. Plaintiffs contend that the Agreement conflicted with state law and was void as violative of public policy. However, we agree with the district court's finding that:
 
 
 13
 [P]laintiffs' interests in continued employment flowed not only from a statute, but from the terms and conditions of employment negotiated in their behalf by their exclusive representative and set forth in Article XIII of the Agreement, which provides that employees may be disciplined or discharged for "cause" only and in Article XII, which contains procedures for securing that protection. See, Winston v. United States Postal Service, 585 F.2d 198 (7th Cir.1978).
 
 
 14
 Plaintiffs' terminations were for "cause" as required by the Agreement and applicable state laws pursuant to the discipline procedures outlined in the Agreement. Accordingly, plaintiffs were not free to appeal to the Cleveland Civil Service Commission but rather must rely on the Agreement and the Ohio Rev.Code Secs. 4117.08 and 4117.10 for their sole and exclusive remedy for addressing any alleged wrongs suffered.
 
 
 15
 Ohio law clearly recognizes that a bargained for agreement that defines the terms and conditions of employment will control all labor disputes between union employees and a public employer. Ohio Revised Code Sec. 4117.08 provides in pertinent part that:
 
 
 16
 (A) All matters pertaining to wages, hours, or terms or other conditions of employment and continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative.
 
 
 17
 (C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in chapter 4117 of the Revised Code impairs the right and responsibility of each public employer to:
 
 
 18
 (5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees ...
 
 
 19
 Furthermore, O.R.C. Sec. 4117.10 provides that:
 
 
 20
 (A) An agreement between a public employer and an exclusive representative entered into pursuant to chapter 4117 of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissioners have no jurisdiction to receive and determine any appeals relating to matters that were the subject of final and binding grievance procedure. Where no agreement exists or where an agreement makes no specification about a matter, the public employer and the public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. (emphasis added)
 
 
 21
 Pursuant to Sec. 4117.10 an agreement defining the terms and conditions of employment did exist thus limiting plaintiffs' remedy to the grievance procedure contained in their bargained for agreement, including final and binding arbitration.
 
 
 22
 Accordingly, plaintiffs' complaint that the Board's failure to advise them of their right to appeal to the Cleveland Civil Service Commission operated as a violation of due process is unsupported. They had no such statutory right.
 
 
 23
 Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
 
 
 24
 Board of Regents v. Roth, 408 U.S. 564, 576-578 (1972); Reagan v. United States, 182 U.S. 419, 425 (1951).
 
 IV.
 
 25
 Without a doubt, plaintiffs had a property interest in continued employment. Memphis Light, Gas & Water Div. v. Croft, 436 U.S. 1, 11-12 (1978); Goss v. Lopez, 419 U.S. 565, 573-79 (1974) This property right entitled them to due process in the event of termination. The Supreme Court established the basic standard for pre-termination hearings in Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985).
 
 
 26
 The essential requirements of due process ... are notice and opportunity to respond. The opportunity to present reasons, either in person or in writing, why a proposed action should not be taken is a fundamental due process requirement.
 
 
 27
 Loudermill, 470 U.S. at 546. We find this requirement has been satisfied. This court has previously held that a 42 U.S.C. Sec. 1983 action could not maintain a fourteenth amendment due process claim unless the plaintiffs can prove that the state remedies are deficient. Vicory v. Walton, 721 F.2d 1062, (6th Cir.1983), rehearing en banc denied, 730 F.2d 466 (6th Cir.1984) cert. denied 105 S.Ct. 125 (1984).
 
 
 28
 Plaintiffs White and Berkley were notified of their violations and were given an opportunity to correct any factual errors that influenced the Board's decision prior to termination. Ms. White failed to appear at the Board Office to discuss her license suspension as requested even though she knew that a consequence of holding an invalid license was termination. Mr. Berkley was also granted a hearing and an opportunity to discuss the charges against him. Once terminated, both plaintiffs were entitled to file grievances pursuant to the Agreement. Plaintiffs exercised this right up to the third step and could have proceeded to the fourth step had the union pursued their grievances to final and binding arbitration.
 
 V.
 
 29
 Relying on a recent decision involving this same Agreement, plaintiffs argue that the state laws controlling discipline (Sec. 124.34) are not replaced by the Agreement since final and binding arbitration is only available in a limited number of situations when the grievance panel is deadlocked. Sutton v. Cleveland Board of Education, United States District Court, Northern District of Ohio, Eastern Division, Case No. C86-3307 (June 16, 1988). However, this interpretation of the legislative intent does not apply to the facts of this case. Here, although plaintiffs were unsuccessful with the first two steps of their individual grievances, the grievance panel was equally divided at the third step. This deadlock entitled them to submit their grievances to an arbitrator. Accordingly, we find plaintiffs were not prejudiced or injured in any way and therefore may not avail themselves of the state remedies.
 
 
 30
 For all of the foregoing reasons, the judgment of the district court is AFFIRMED.