**STATE OF OHIO, ex rel. Ruth MANUEL, Plaintiff,**

v.

**OHIO DEPARTMENT OF HEALTH, et al., Defendants.**

**No. C2–92–646.**

United States District Court, S.D. Ohio, E.D.

Dec. 2, 1992.

James Edward Melle, Lucas Law Firm, Columbus, OH, for plaintiff.

Carla R. Dowling–Brown, Ohio Atty. Gen., Samuel Neal Lillard, Asst. Atty. Gen., Columbus, OH, for defendants.

## MEMORANDUM AND ORDER *

BECKWITH, District Judge.

### Background

This matter is currently before the Court for consideration of the Defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Plaintiff opposes the Defendants' motion.

This case arises from the October 1991 change of Plaintiff's civil service status from "classified" to "unclassified," resulting in different tenure and civil service treatment under Ohio law. Defendants include the Ohio Department of Health and the Department of Administrative Services, employer of Plaintiff and the agency responsible for the administration of the Ohio civil service laws, respectively. The other defendants are present or past administrators of these two agencies.

Plaintiff demands judgment to establish her legal right to remain tenured as a classified civil servant under Ohio law. Plaintiff also claims that a civil service classification is a protected property interest under the Due Process Clause of the Fourteenth Amendment, and Plaintiff alleges that her First Amendment rights of association were violated because Defendants' actions were politically motivated. Plaintiff adds claims for intentional and negligent infliction of emotional distress in connection with the Defendants' actions.

Defendants removed this action from state court to this Court pursuant to 28 U.S.C. Section 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant...." In addition to general denials, Defendants raise Eleventh Amendment State immunity as a complete bar to actions against the State agencies and qualified "good faith" immunity as a complete bar to actions against the individual administrators of those agencies.

### Analysis

The original jurisdiction of the district courts includes "all civil actions arising under the Constitution." 28 U.S.C. § 1331. Plaintiff's constitutional claims are proper-

ly before the Court on this basis. However, the Court must scrutinize the pendent state claims separately.

The doctrine of pendent jurisdiction establishes that a federal court may properly exercise jurisdiction over state law claims if the state and federal claims "derive from a common nucleus of operative fact," and are so related that plaintiff would ordinarily "expect[ ] to try them all in one judicial proceeding." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). In this case, Plaintiff claims that property rights created by Ohio law were taken from her, and that that action placed Plaintiff outside the procedurally protected employee class, thus establishing the basis for her Fourteenth Amendment Due Process claim. Plaintiff would ordinarily expect one trial on the state and federal claims under these circumstances.

■ The pendent jurisdiction doctrine must give way to constitutional imperatives, however, and the Eleventh Amendment dictates that a federal court may not entertain a suit brought by a citizen against his own state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment also commands that a federal court not issue an injunction ordering a state official to conform his conduct to state law.

■ In *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984), the Supreme Court stated as follows:

[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

The *Pennhurst* Court further recognized that a suit brought to compel action on the part of state officials to conform to state law is actually a suit against the sovereign state, and thus invokes Eleventh Amendment protections. Even as to the State administrators in this case, this Court is without jurisdiction to provide Plaintiff with relief should she prevail on her state law claim that she is entitled to her previous civil service classification.

■ The Supreme Court has held that the qualified immunity of a state official is defeated if he "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with malicious intention to cause a deprivation of constitutional rights or other injury." *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975), *reh'g. denied,* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975). An official is entitled to qualified immunity if his actions are objectively reasonable in light of clearly established law. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). An official's claim to immunity may not be defeated by an allegation of malice alone. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). For Plaintiff's action to succeed, the Court must determine that the Defendants could not have reasonably believed that their actions were consistent with the rights that Plaintiff claims were violated. *Anderson v. Creighton,* 483 U.S. 635, 638–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) (citation omitted). Defendants have qualified immunity unless Plaintiff's "rights were so clearly established when the acts were committed that any officer in the [D]efendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Dominique v. Telb,* 831 F.2d 673, 676 (6th Cir.1987).

The Supreme Court has stated that "clearly established" does not mean "that an official action is protected by qualified immunity unless that very action in question has previously been held unlawful; but it is to say that in light of preexisting law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. The Court of Appeals for the Sixth Circuit stated that "the Supreme Court has done little more than state that courts can

rely on relevant Supreme Court, circuit and district opinions in deciding whether a right is clearly established." *Ohio Civil Service Employees Association v. Seiter*, 858 F.2d 1171, 1175 (6th Cir.1988).

In *Rice v. Ohio Department of Transportation*, Case No. C2–2–82–1700 (S.D.Ohio 1991), this Court held that clearly established law in 1982 concerning the use of political affiliation for making changes in state administrative offices was controlled by the decisions in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In *Elrod* and *Branti*, the Supreme Court held that political affiliation could not be the sole basis for *discharging* an employee who was otherwise performing his job satisfactorily unless political affiliation was an appropriate requirement for the effective performance of the office. The alleged discriminatory conduct in *Rice v. Ohio Department of Transportation* involved the right of the plaintiff therein to *promotion* without reference to political affiliation; no clearly established First Amendment right was found based on the factual distinction between the discharge of an employee and his or her promotion.

The next major case concerning political affiliation and the right of public employment was *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), *reh'g. denied*, 497 U.S. 1050, 111 S.Ct. 13, 111 L.Ed.2d 828 (1990). The *Rutan* Court held that the rule in *Elrod* and *Branti* extends to promotion, transfer, recall, and hiring decisions based on party affiliation. The Court stated that, "[u]nless these patronage practices are narrowly tailored to further vital government interests, we must conclude that they impermissibly encroach on First Amendment freedoms." *Rutan*, 497 U.S. 62, 110 S.Ct. 2729 (1990). Since the incidents in the instant case occurred in July 1991, after the Court's decision in *Rutan*, the validity of the Defendants' qualified immunity defense to Plaintiff's First Amendment claim is questionable. The Court finds that demotion or change of classified status is sufficiently similar to the types of actions discussed by the *Rutan* Court that Defendants in this matter must have been aware of the potential application of the doctrine of that case to Plaintiff's situation.

Plaintiff's Section 1983 and 1985 claims are based on alleged violations of due process as well as the First Amendment. In *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), *reh'g. denied*, 730 F.2d 466 (1984), *cert. denied*, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984), the court stated the following:

> [I]n section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong.

*Id.*, at 1066. The *Vicory* court's policy was to defer consideration of procedural due process arguments until state courts were given a chance to resolve the state issues. The Ohio courts have not demonstrated an unwillingness to hear Plaintiff's case. The policy of *Vicory* argues for dismissing the state causes of action as well as the procedural due process claims in this matter in deference to the state courts.

As stated above, *United Mine Workers v. Gibbs* framed the modern doctrine of pendent jurisdiction. *Gibbs* stated that removal is not provided to expand federal jurisdiction merely to make it available to defendants, but because district courts provide a good forum for hearing actions that could be brought under federal original jurisdiction. In *Carnegie Mellon University v. Cahill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the Supreme Court stated the following:

> a federal court should consider and weigh in each case ... the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case.... When the balance of these factors indicates that a case properly belongs in

state court ... the federal court should decline the exercise of [jurisdiction].... *Id.*, at 350, 108 S.Ct. at 619. The *Gibbs* Court indicated that these factors will usually favor state court jurisdiction when "state issues substantially predominate, whether in terms of proof, the scope of the issue raised, or the comprehensiveness of the remedy sought." *Gibbs*, 383 U.S. at 720, 86 S.Ct. at 1135–36.

The predominance, scope, and comprehensiveness concerns of *Gibbs* require the recognition of two principles. First, the Eleventh Amendment, as interpreted recently by the Supreme Court, presents a jurisdictional bar to a federal court using injunctive relief to force state officials into conformity with state law. The Amendment also bars the current state causes of action against the agency Defendants if asserted in federal court, but not if asserted in state court. Second, state corrective procedures should be given a chance to operate before due process claims attacking the effectiveness of those procedures are heard in federal court.

█ It appears to the Court that two options are available for proceeding in this matter. First, the Court could dismiss the case in its entirety in deference to the state courts. The advantage of this course of action is that it recognizes the importance of the state law claims and presents no jurisdictional concerns in a case where the Eleventh Amendment clearly limits the subject matter jurisdiction of the federal courts. The Plaintiff could reasonably expect all of her claims to be heard in a single forum, because the state courts could properly exercise jurisdiction over the state claims as well as the federal constitutional claims. The disadvantage to this approach is that the federal courts, which provide the best forum for the Plaintiff's First Amendment claim in the wake of the Supreme Court's recent decision in *Rutan*, are deprived of jurisdiction over that claim.

The second option, and that chosen by this Court, is to dismiss the state law causes of action and the due process claim, reserving to this Court the First Amendment claim. This course of action avoids the jurisdictional barriers of the Eleventh

Amendment and permits state corrective procedures to operate before allowing the Plaintiff's due process claim to be heard. The due process claim will be dismissed without prejudice, and, in the event that the Plaintiff does not receive satisfactory relief in the state courts, she may reintroduce her due process claim based on Ohio's alleged duty to provide a hearing before depriving Plaintiff of her property.

The Court recognizes that this course of action may result in the splitting of a case involving a common nucleus of operative fact if the Plaintiff chooses to proceed in the state courts on her state law claims without awaiting this Court's resolution of her First Amendment claim. The Court further notes that such splitting of jurisdiction is extraordinary and inconsistent with the goal of judicial economy. The Court, nevertheless, chooses this course of action because of the importance of the First Amendment issue raised by the Plaintiff. The Court determines that if all of the factual questions concerning that claim are resolved in Plaintiff's favor, the remaining causes of action may be moot. In addition, the Court is motivated by the potential danger that the First Amendment claim will be subordinated to the state law claims in the state courts. In short, the Court will dismiss the state law causes of action for reasons of comity but will retain jurisdiction over the First Amendment claim in the interests of fairness and justice.

### Conclusion

For the reasons set forth, Plaintiff's state law causes of action are hereby DISMISSED. Plaintiff's due process claim is DISMISSED WITHOUT PREJUDICE to its reintroduction at such time as Plaintiff's state law remedies are exhausted. The only remaining claim in this matter is Plaintiff's claim under the First Amendment that the change in the status of her public employment was motivated by her political affiliation.

IT IS SO ORDERED.