HURON VALLEY HOSPITAL, INC., A Michigan non-profit corporation, Plaintiff,

v.

CITY OF PONTIAC, a Michigan municipal corporation; City of Pontiac Hospital Building Authority, a Michigan municipal corporation; Pontiac Osteopathic Hospital, a Michigan non-profit corporation; Crittenton Hospital, a Michigan non-profit corporation; Sisters of Mercy Corporation, a Michigan non-profit corporation; Comprehensive Health Planning Council of Southeastern Michigan, a health systems agency; North Oakland County Planning Steering Committee, a planning group under the auspices of Greater Detroit Area Health Council, Inc., a Michigan corporation; United States Department of Health and Human Services, an executive agency of the United States; Margaret Heckler, as Secretary of the Department of Health and Human Services; Bailus Walker, Jr.; Maurice S. Reizen, M.D.; Herman A. Ziel, M.D.; Richard Reihmer; Paul Masseron, and Terence E. Carroll, Defendants.

No. 78–72970.

United States District Court,
E.D. Michigan, S.D.

June 17, 1985.

Lesinski, Kroll, Murphy & O'Neil by T. John Lesinski, Michael E. Murphy, Detroit, Mich., John P. Morris, Arizona State University College of Law, Tempe, Ariz., Kohn, Milstein, Cohen & Hausfeld by Jerry S. Cohen, Washington, D.C., for plaintiff.

Miller, Canfield, Paddock & Stone by Larry J. Saylor, Detroit, Mich., for defendants City of Pontiac and City of Pontiac Hosp. Building Authority.

Dykema, Gossett, Spencer, Goodnow & Trigg by Roger K. Timm, Detroit, Mich., for defendants Pontiac Osteopathic Hosp. and Crittenton Hosp.

Martin, Maxwell, Smith, Buhl & Hanson, P.C. by Robert A. Maxwell, Bloomfield Hills, Mich., for defendants Sisters of Mercy Corp.

Riley and Roumell by Timothy M. Guerriero, Detroit, Mich., for defendants Comprehensive Health Planning Council of Southeastern Michigan, Paul Masseron and Terence E. Carroll.

Long, Preston, Kinnaird & Avant by Grady Avant, Jr., Detroit, Mich., for defendants North Oakland County Planning Steering Committee, Greater Detroit Area Health Council, Inc.

Charles Sorenson, Dept. of Justice, Civ. Div., Washington, D.C., for defendants U.S. Dept. of Health and Human Services and Margaret Heckler.

Edwin M. Bladen, Asst. Atty. Gen., Lansing, Mich., for defendants Balius Walker, Jr., Maurice S. Reizen, M.D., Herman A. Ziel, M.D., Richard Reihmer.

## OPINION

GILMORE, District Judge.

Once again, this matter is before the Court upon motions to dismiss and/or for summary judgment. The basic facts are set forth in this Court's prior opinion, *Huron Valley Hospital, Inc. v. City of Pontiac*, 585 F.Supp. 1159 (E.D.Mich.1984).

Here, the four state defendants, present and former officials of the Michigan Department of Public Health (MDPH) (Balius Walker, Jr., Richard Reihmer, Maurice S. Reizen, M.D., and Herman A. Ziel, M.D.) and the hospital defendants (Pontiac General Hospital, Pontiac Osteopathic Hospital, Crittenton Hospital, and the Sisters of Mercy Corporation) have filed motions to dismiss and for summary judgment. The MDPH, as an entity, was dismissed by stipulation on February 18, 1983.

## I. STATE DEFENDANTS

### A. *Statute of Limitations*

■■■ · The first motion by the state defendants claims that the action is untimely under applicable statutes of limitation. The limitations period for an antitrust claim is four years under 15 U.S.C. § 15b, and for a 42 U.S.C. § 1983 claim, the applicable statute is Michigan's three year limitation on personal injury claims, M.C.L.A. § 600.5805(8). *See Wilson v. Garcia*, 471 U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254.

The state defendants were named in a proposed amended complaint, but the amendment was denied by Judge Kennedy in 1979 [1]. Therefore, they did not become defendants in this action until they were named in the amended complaint filed on November 15, 1983. Thus, the crucial date for any antitrust claim is four years before that, or November 15, 1979, and for any civil rights claim, November 15, 1980, in

---

1. *See Huron Valley Hospital, Inc. v. City of Pontiac, No. 78-72970 (E.D.Mich. Jan. 29, 1979).*

the absence of tolling.[2] These defendants argue that the latest act that even arguably could gave rise to a cause of action was the failure of MDPH to issue a second certificate of need for an additional 150 beds in the hospital within 90 days after the request for it was filed on June 1, 1978—90 days representing the time within which the MDPH was required to act upon an application for a Certificate of Need (CON) under 42 C.F.R. § 100.101. In other words, the defendants argue that plaintiff's cause of action accrued, if at all, on August 30, 1978 at the latest, thus barring both the Section 1983 claim and the antitrust claim.

This argument overlooks the fact that both the district court[3] and the court of appeals[4] held that this action was not ripe for adjudication until the state administrative and judicial proceedings were complete. Indeed, the case was stayed at the direction of the Court of Appeals for two years. The state proceedings were not completed until October 27, 1982, when the MDPH finally issued plaintiff a CON in a reasonable amount.

■ In addition, plaintiff has alleged that these defendants engaged in a continuing conspiracy to prevent the construction of this hospital that extended at least until April of 1982 as to these defendants. Although defendants argue that the allegations of continuing conspiracy have not been pled with sufficient particularity, the complaint does contain several general allegations of continuing conspiracy, and the Sixth Circuit has held that a complaint may be dismissed as time-barred under Fed.R. Civ.P. 12(b)(6) only if "the statement of the claim affirmatively shows that plaintiff can prove *no* set of facts that would entitle him to relief." *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir.1975) (emphasis in original). This Court cannot say that the complaint in this case shows such a deficiency on its face. In addition, the Supreme Court held, in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971), that in a "continuing conspiracy to violate the antitrust laws ... each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act."

■ Finally, these claims are not barred by the statute of limitations because they relate back to the date of the filing of the original complaint, November 16, 1978. Because the original complaint described alleged illegal acts on the part of MDPH, the state agency of which these defendants were officials, and because the amended complaint proposed in January 1979 named these defendants individually and sought to add a Section 1983 claim, the requirements of Fed.R.Civ.P. 15(c) for relation back of an amendment are met as to these defendants.[5] Therefore, for the reasons given,

---

**2.** The defendants first assert that the applicable limitation period should be the 60 day period for appealing an adverse administrative determination under the Michigan Administrative Procedures Act, M.C.L. § 24.304. This argument is without merit. *Burnett v. Gratton*, 468 U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984), held that a six-month state statute of limitations on filing employment discrimination complaints with an administrative agency was inappropriate for actions under the Civil Rights Acts (42 U.S.C. § 1981 *et. seq.*).

**3.** *Huron Valley Hospital, Inc. v. City of Pontiac*, 466 F.Supp. 1301 (E.D.Mich.1979), *reversed on other grounds*, 666 F.2d 1029 (6th Cir.1981).

**4.** *Id.* 666 F.2d 1029 (6th Cir.1981).

**5.** These defendants concede the amended complaint arose out of the same transaction or occurrence, but rely on *Ringrose v. Engelberg Huller Co., Inc.*, 692 F.2d 403 (6th Cir.1982), for the proposition that Rule 15 does not allow the addition of a new party after the statute would otherwise have run. Defendants assert that the rule permits an amendment to relate back only if it seeks to change a party who is already in the action—in essence, only when correcting a misnomer. *Ringrose* does not support such a narrow construction of Rule 15, since the court remanded the case for a determination of whether service on a predecessor corporation was sufficient to give such notice that the two successor corporations would not be prejudiced in their defenses on the merits, indicating that the real concern was with the adequacy of the notice given. *See also* 6 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1498, at 512 (1971) where they note a split on the issue, but

there is no basis for dismissing these defendants because of the running of the statute of limitations. The suit is timely as to them.

## B. Res Judicata

■ These defendants next claim that plaintiff's Section 1983 claims could and should have been raised in prior state proceedings, and that plaintiff's failure to do so is *res judicata* in this action.[6] This assertion is without merit. The state proceedings were simply appeals from administrative determinations, limited under the state Administrative Procedures Act[7] to a determination of whether the administrative decision was supported by competent, substantial evidence on the record taken as a whole. *Avon Township v. Boundary Commission*, 96 Mich.App. 736, 293 N.W.2d 691 (1980); *Murphy v. Oakland County Dept. of Health*, 95 Mich.App. 337, 290 N.W.2d 139 (1980). That fact distinguishes this case from *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), which held that any claims which either were or could have been litigated in a prior state proceeding were barred in a subsequent federal Section 1983 action, because the state proceedings in those cases afforded the opportunity to raise the issue on which the Section 1983 claims were based.

Plaintiff did raise some due process arguments during the state proceedings in this case.[8] Those allegations were limited, however, to defects in the administrative process, and did not encompass the broad allegations of conspiracy raised by the Section 1983 claim in the instant case.

■ The state defendants also claim that the earlier dismissal with prejudice of MDPH, of which these defendants were officials, is *res judicata* to them as individuals. The settlement agreement expressly provides, however, that "such dismissal is not intended, and shall not be construed to effect the liability, if any, of any of MDPH's officials, employees or agents, but is intended to apply to the Department, as an agency of government, only."

Therefore, it is clear that plaintiff's claims are not barred by res judicata.

## C. 11th Amendment

■ These defendants next assert that this suit is actually against the Michigan state treasury, and is therefore barred by the 11th Amendment's prohibition on suits against the states in federal court. While it is true that a suit against a state official which seeks damages from the public treasury is generally barred by the 11th Amendment, the Supreme Court has held that "damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). In the *Scheuer* case, the Court held that an award of money damages from a state official may be permissible if the defendant cannot show that his actions were characterized by good faith and reasonableness, and reversed the dismissal of a § 1983 action against the Governor of Ohio and other high state officials on 11th Amendment grounds. The Court noted that Section 1983 was intended to remedy precisely such "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." 416 U.S. at 243, 94 S.Ct. at 1690 (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)).

see "no justification" for such a restrictive interpretation as defendants urge, so long as the notice requirement is satisfied.

**6.** See discussion of prior state proceedings in *Huron Valley Hospital, Inc. v. City of Pontiac*, 585 F.Supp. 1159, 1161–62 (E.D.Mich 1984).

**7.** M.C.L. § 24.201 *et. seq.*

**8.** *See Huron Valley Hospital, Inc. v. State Health Facilities Commission*, 110 Mich.App. 236, 244–46, 312 N.W.2d 422 (1981).

The Michigan Court of Appeals has already found that there have been abuses of discretion and actions exceeding statutory authority amounting to a denial of due process and equal protection in *Huron Valley Hospital, Inc. v. State Health Facilities Commission,* 110 Mich.App. 236, 244–46, 312 N.W.2d 422 (1981). Further, the complaint contains allegations of conspiracy which put defendant's good faith squarely into contention. Therefore, dismissal under 11th Amendment immunity would be inappropriate at this time.

## D. "State Action" Antitrust Immunity

The state defendants claim immunity from antitrust liability under the so-called "state action" exemption, which derives from the 1943 Supreme Court case of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), in which the Court held that states are immune from antitrust liability when they act as sovereigns. In *California Retail Liquor Dealers Ass'n. v. Midcal Aluminium, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), the Supreme Court set forth a two-part test to determine whether the exemption should apply. It held that the challenged restraint must be "clearly articulated and affirmatively expressed as state policy" and must be " 'actively supervised' by the State itself." 445 U.S. at 105, 100 S.Ct. at 943.

Here, plaintiff has challenged the good faith of the state defendants, and a state court has held that MDPH exceeded and abused its statutory authority and denied plaintiff due process and equal protection. Therefore, it cannot be said that the actions of these defendants were taken pursuant to a clearly articulated state policy. The Seventh Circuit observed that:

> [I]t has generally and sensibly been held that where the activities of a governmental unit are outside the scope of the antitrust laws, the officials charged with performing those activities enjoy the same protections.... Even in such cases, however, it has sometimes been recognized that an official's actions ultra

vires or in bad faith might present a different question.

*Kurek v. Pleasure Driveway and Park District,* 557 F.2d 580, 591 (7th Cir.1977).

It is precisely such allegations of actions taken ultra vires and in bad faith that distinguish the instant action from *Southern Motor Carriers Rate Conference v. U.S.,* —— U.S. ——, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985). In *Southern Motor Carries,* the United States filed suit to enjoin the practice of joint ratemaking by private trucking collectives, a practice that was authorized by state public service commissions. The Court found the practice immune from antitrust liability under the state action exemption, but it is important to note that there were no allegations that the private parties acted in bad faith or exceeded what had been authorized by the public service commissions. The challenge in *Southern Motor Carriers* was to the very practice of private collective ratemaking. In the instant action, by contrast, plaintiff challenges the certificate of need procedures only as applied to it, and it was the handling of this plaintiff's CON application that the Michigan Court of Appeals found constituted a due process violation.

Furthermore, the decision of the Supreme Court in *Hoover v. Ronwin,* —— U.S. ——, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984), provides little help to these defendants. That case dealt with a challenge to state bar admission process, and the Court held that, where the challenged state action is that of the state legislature or supreme court, it need not address the issues of "clear articulation" or "active supervision." Such a holding is inapplicable to these officials because they act neither as a legislature nor as a supreme court. They are officials of a state administrative agency.

## E. Harlow v. Fitzgerald Qualified Immunity

Defendants next claim that under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), they are shielded from liability. *Harlow* held that "government officials performing discre-

tionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738.

■ In the Sixth Circuit, *Harlow* qualified immunity is an affirmative defense. In *Alexander v. Alexander*, 706 F.2d 751 (6th Cir.1983), the court held:

> [A] Section 1983 defendant retains the burden of pleading the qualified immunity defense ..., and proving either that the law was not clearly established at the time of plaintiff's alleged injury, or, if the law was clearly established, that he neither knew nor should have known of the relevant legal standard due to extraordinary circumstances ... Since the district court placed the burden of proving the qualified immunity defense on the wrong party, we remand this case to the district court for reconsideration of this issue in light of this opinion.

*Id.* at 754.

■ The Court does not think that the defendants have carried their burden of proof on this issue so as to require summary judgment. In this case, the Michigan Court of Appeals found that defendants' interpretation of the statute was "based on extremely tenuous notions about statutes which were not clearly related to the certificate of need statute." *Huron Valley Hospital, Inc. v. Michigan State Health Facilities Commission*, 110 Mich.App. 236, 248–49, 312 N.W.2d 422 (1981). Further, even after defendants were ordered to issue the certificate of need by the Oakland County Circuit Court, they issued one for an amount that the court later determined to be unreasonably low. It finally took a writ of mandamus from this Court in *Huron Valley Hospital, Inc. v. City of Pontiac*, 585 F.Supp. 1159 (E.D.Mich.1984), to secure Section 1122 approval for the plaintiff. In light of these facts, it cannot be said as a matter of law that defendants are entitled to qualified immunity under *Harlow*.

### F. Plaintiff's Claim Under 42 U.S.C. § 1983

Defendants make three claims seeking to dismiss the Section 1983 claim. They first argue that plaintiff had no protectible property interest in a certificate of need or in Section 1122 approval. Secondly, they assert that plaintiff has not carried its burden under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), of pleading and proving that state remedies are inadequate to accord due process. Finally they maintain that there is no state action that would give rise to a Section 1983 claim. The Court will deal with these claims *seriatim*.

■ Defendants' first argument is that plaintiff has no protectible property interest in a certificate of need or in Section 1122 approval under *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) since a mere "unilateral expectation" of a property interest is not sufficient without a "legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. at 2709. They further argue that, since a holder of an existing liquor license does not have a property interest in its renewal under Michigan law, (*see Bundo v. Walled Lake*, 395 Mich. 679, 238 N.W.2d 154 (1976) ), plaintiff similarly can have no protectible property interest in a certificate of need or in Section 1122 approval for an entirely new hospital, and is akin to a first-time license seeker who has only a "unilateral expectation."

Defendants' argument may have been accurate characterization of plaintiff's position in 1976 when it first sought approval, but it is no longer accurate as of today. Michigan courts determined that plaintiff was entitled to a certificate of need and ordered that one be issued, and defendants continued to resist. Indeed, the state courts have already held that plaintiff was denied due process in the consideration of its application. It is clear that plaintiff has raised sufficient factual issues to survive a motion to dismiss on this question.

■ Defendants next assert that plaintiff has not carried its burden under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), of pleading and proving that state remedies are inadequate to accord due process. *Parratt,* however, is not on point. In *Parratt,* a state employee negligently lost a prisoner's hobby kit, and the court concluded that a post-deprivation tort action provided a constitutionally sufficient remedy. Here, plaintiff has alleged a concerted effort by both state employees and private parties to deprive it of its due process guarantees. An argument similar to defendants' was made in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), and the Court observed: "This argument misses *Parratt*'s point. In *Parratt,* the Court emphasized that it was dealing with a 'tortious loss of ... property as a result of a random and unauthorized act by a state employee ... not a result of some established state procedure.'" 455 U.S. at 435–36, 102 S.Ct. at 1157–58. The *Logan* Court held that a Section 1983 action was proper.

While it is true that plaintiff alleges that these defendants acted ultra vires, this situation is much closer to a deprivation as a result of state procedure itself, as in *Logan,* than to mere negligence as in *Parratt. Parratt* goes only to unauthorized deprivation of property. This case involved the alleged abuse of established state procedure, with the knowledge and cooperation of state officials, and the complaint therefore is sufficient.

■ Finally, defendants maintain that any part they may have played in the denial of plaintiff's Section 1122 approval is not a proper subject for a Section 1983 action, because their role was limited to making an initial review and submitting a recommendation to HHS, and thus the denial was not state, but federal, action. This Court has already determined in its prior opinion granting summary judgment as to Count III of the complaint that:

> The MDPH and the Michigan Attorney General clearly believed, and correctly, that its decision-making process regarding both the CON and Section 1122 application were the same. It denied them both initially for the same reasons. It clearly believed that the decisions of the Michigan courts regarding the CON application were equally valid and binding on the state's consideration of the Section 1122 application.

*Huron Valley Hospital, Inc. v. City of Pontiac,* 585 F.Supp. 1159, 1163 (E.D.Mich. 1984).

The amended complaint alleges a comprehensive effort by state officials and private parties to prevent the construction of this hospital, and therefore involves sufficient state action for a Section 1983 claim.

## II. HOSPITAL DEFENDANTS

### A. 42 U.S.C. § 1983 Claim

These defendants argue that plaintiff has no property interest protectible in a Section 1983 action and, therefore, they should be dismissed. For the same reasons stated, *supra,* with reference to the state defendants, this argument is without merit.

The hospital defendants additionally argue that any state action for the purpose of a Section 1983 claim cannot extend to them, since they are private actors not clothed with the authority of state law.

It is clear, however, that plaintiff's allegations of actions by these defendants involving both state and private actors are sufficient to invoke Section 1983 against these defendants. In *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970) the Supreme Court held, quoting *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966), that: "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of state law for purposes of the statute.... It is enough that [the accused] is a willful participant in joint activity with the State or its agents."

In 1980, in *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), the Court held that allegations of a conspiracy with a judge are sufficient to defeat a

motion to dismiss for failure to allege state action on the part of private parties, even where the judge is dismissed from the action as entirely immune. *See also Macko v. Bryon,* 641 F.2d 447 (6th Cir.1981), reversing a grant of summary judgment where a conspiracy was alleged between two prosecutors and several private parties, although the prosecutors were dismissed as immune. *See also Tarleton v. Meharry Medical College,* 717 F.2d 1523, 1533–34 (6th Cir.1983), in which the court reversed the grant of summary judgment for private defendants in a suit alleging both antitrust and Section 1983 violations, quoting *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961): "[o]nly by sifting facts and weighing circumstances can the non-obvious involvement of the State in private conduct be attributed its true significance."

### B. Failure to Allege a Conspiracy With Sufficient Particularity

 These defendants contend that the complaint should be dismissed because the allegations of antitrust conspiracy in the amended complaint are not specific enough. It is true that the allegations are not extremely specific, but the Supreme Court has stated a policy against summary disposition of antitrust conspiracy claims in *Poller v. CBS,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962): "We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the conspirators, and hostile witnesses thicken the plot." *See* A.B.A. Antitrust Section, *Antitrust Law Developments* 3 (2d Ed.1984). The Sixth Circuit has cited *Poller* in reversing the summary dismissal of the antitrust claim in *Tarleton v. Meharry Medical College, supra,* noting that summary dismissal should be granted only "very sparingly" under this "rigorous standard."

Therefore, this Court is not prepared to dismiss plaintiff's claims of conspiracy for failure to plead with sufficient particularity.

### C. Antitrust Immunity Under Noerr-Pennington

 The hospital defendants claim the case should be dismissed under the *Noerr-Pennington* doctrine, which holds that joint efforts to influence public officials do not violate the antitrust laws, even though intended to eliminate competition. *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). This doctrine is intended to preserve the first amendment right to petition the government. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

 It should be noted, however, that an exception to this doctrine has been created where the attempt to influence government is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr, supra,* 365 U.S. at 144, 81 S.Ct. at 533. The Supreme Court has noted that the line between legitimate conduct and a sham "may be a difficult line to discern and draw." *California Motor Transport, supra,* 404 U.S. at 513, 92 S.Ct. at 613. The allegations in this case go beyond the mere filing of one lawsuit, which the Sixth Circuit recently found protected under the *Noerr-Pennington* doctrine in *City of Cleveland v. Cleveland Electric,* 734 F.2d 1157 (6th Cir.1984), but are more analogous to the sort of abuse of process in barring access to agencies or courts that the court stated would fall within the sham exception.

The Second Circuit held in *Litton Systems, Inc. v. AT & T,* 700 F.2d 785, 809 n. 36 (2d Cir.1983) that the sham exception to the *Noerr-Pennington* doctrine is applicable in the situation known as "agency capture," where the regulated become the regulators. This is precisely the situation alleged in the complaint in this action, and

taking the allegations as true for the purpose of this motion, as the Court must, the Court finds that *Noerr-Pennington* does not apply to these defendants, and does not provide a basis for dismissal.

### D. Statute of Limitations

■■■ Although the requirements of Fed. R.Civ.P. 15(c) are not met as to these hospital defendants, since they were not named in the amended complaint proposed in January 1979, plaintiff's allegations of a continuing conspiracy are even more significant for them, because they are alleged to have taken a more active role in the continuing effort to deny plaintiff Section 1122 capital expenditure approval. Specifically, these defendants are alleged to have conducted a series of ex parte requests for reconsideration of MDPH's Section 1122 approval, which succeeded in convincing HHS to revoke its previously-issued approval.

Since the conspiracy is alleged to have involved these defendants up until this Court's issuance of a writ of mandamus in April 1984, these allegations clearly are sufficient to enable plaintiff to survive a statute of limitations challenge from the hospital defendants.

### III. LOCAL GOVERNMENT ANTITRUST ACT OF 1984

■■■ Defendants City of Pontiac and City of Pontiac Hospital Building Authority also move for a partial summary judgment as to Count I, which alleges violation of the Sherman Antitrust Act. These defendants rely upon the Local Government Antitrust Act of 1984, Pub.L. No. 98–544, 98 Stat. 2750 (codified at 15 U.S.C. § 35).

Section 3(a) of that Act provides that no damages may be recovered under the Clayton Act from any local government or official or employee thereof acting in an official capacity.

Section 3(b) of the Act, however, limits its application. That section provides:

Subsection (a) shall not apply to cases commenced before the effective date of this Act unless the defendant establishes and the court determines, in light of all the circumstances, including the stage of litigation and the availability of alternative relief under the Clayton Act, that it would be inequitable not to apply this subsection to a pending case. In consideration of this section, existence of a jury verdict, district court judgment, or any stage of litigation subsequent thereto, shall be deemed to be prima facie evidence that Subsection (a) shall not apply.

This action was filed originally in November 1978, and Judge Kennedy granted defendants' motion for summary judgment in March 1979. *Huron Valley Hospital, Inc. v. City of Pontiac,* 466 F.Supp. 1301 (E.D. Mich.1979). The Sixth Circuit vacated that decision, 666 F.2d 1029 (6th Cir.1981), and remanded in December 1981 for a stay pending the completion of state administrative and judicial proceedings. Plaintiff filed a proposed amended complaint on November 15, 1983, and when the stay was lifted in December of that year, the amended complaint was accepted for filing.

Discovery is well under way in this case. Plaintiff filed its first request for production of documents on August 1, 1984, and defendants have filed requests for production of documents and interrogatories. There are also discovery motions pending before this Court's magistrate.

It is defendants' contention that Section 3(a) of the Act should apply in spite of 3(b), arguing that, even though this is a 1978 case, it is still in an early stage of litigation because of the long stay and the appeals that have been had. Therefore, defendants argue, it would be inequitable not to apply the bar against antitrust damage awards from Section 3(a). Defendants also argue that plaintiff has alternative relief available, namely an injunction against all defendants and money damages from all of the other defendants.

Defendants further cite legislative history suggesting that one measure of an early stage of litigation is whether the case is still in discovery as opposed to a case that has already proceeded to judgment. They

also cite a floor colloquy suggesting that a court might consider the existence or sufficiency of monetary damages from other defendants who would remain liable, and of injunctive relief as possible "alternative relief" that might be sufficient to invoke the Section 3(a) ban on the pending case. It is clear from the language of the Act that the burden is on the defendant to establish that Section 3(a) bars an action against local government pending at the time of enactment. The defendant has the burden of establishing the availability of alternative relief under the Clayton Act, and the inequitability of not applying Section 3(a) to the pending case. The existence of a jury verdict, district court judgment, or any stage of litigation subsequent thereto is deemed prima facie evidence that the Section 3(a) ban should not apply.

The Court feels that the defendant has failed to meet this heavy burden imposed by the statute. First of all, there has been a district court judgment entered in this case. The fact that it was vacated does not take away from the fact that Judge Kennedy in 1979 granted a motion for summary judgment. It is further clear that, in light of the very checkered career of this case in the state courts of Michigan (*see* discussion in *Huron Valley Hospital, Inc. v. City of Pontiac*, 585 F.Supp. 1159 (E.D.Mich.1984), and the determinations made by this Court in that opinion), the equities clearly do not favor application of the Section 3(a) bar to damages.

It is clear that the decision as to whether to apply the bar is to be made on a case-by-case basis, considering all of the factors that may be relevant. Even in this old case, there has been a lot of activity, and while it is true that there have been stays and delays in the litigation, that discovery is still under way, and that the final pretrial conference is not set until December 17, 1985, the case has been in the courts since 1978 and plaintiffs have not been dilatory or remiss in pursuing this litigation. Further, it is clear that injunctive relief against these hospital defendants would not be sufficient relief for allegations of antitrust and civil rights conspiracy dating back to 1978.

Those allegations are that the defendants who now seek summary judgment were involved in much more than simply carrying out their assigned duties on behalf of the public with certain unintended and consequential effects in restraint of trade, and, for the purpose of this motion, those allegations must be taken as true. Plaintiff has alleged that these defendants were instrumental in conspiring with private parties and with agents of the state to deprive it of its right to due process of law, with the goal of stifling competition. Under these circumstances, defendants have failed to show that it would be inequitable not to apply the Section 3(a) bar on monetary damages and attorney fees.

Therefore, for the reasons stated, Section 3(a) of the Local Government Antitrust Act of 1984 will not be invoked.

All motions to dismiss and/or summary judgment are denied. Appropriate orders may be presented.