**NATIONAL COMMUNICATION SYSTEMS, INC., A Michigan Corporation; Victor E. Shapley, Plaintiffs-Appellants,**

**v.**

**MICHIGAN PUBLIC SERVICE COMMISSION, a Commission of the State of Michigan; Eric J. Schneidewind; Daniel Demlow; Robert Fischer and Gerald Irwin, Defendants-Appellees.**

**No. 85–1159.**

United States Court of Appeals,
Sixth Circuit.

Argued March 3, 1986.

Decided April 25, 1986.

Leo H. Friedman, Frank J. Kelley, Don L. Keskey, Lead Counsel, Lansing, Mich., Louis J. Caruso, Robert P. Brown (argued), for defendants-appellees.

Brian M. Kennedy, Bay City, Mich., Mandel I. Allweil (argued), Bay City, Mich., for plaintiffs-appellants.

Before MERRITT and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.

MERRITT, Circuit Judge.

Plaintiffs-appellants Victor E. Shapley and National Communications Systems, Inc. appeal the District Court's order dismissing their civil rights action. We affirm.

I.

In March 1975, plaintiff Shapley formed plaintiff National Communications Systems, Inc. as a Michigan corporation. Shapley entered into an agreement with the owner of Mesick and Northern Telephone companies, two small telephone companies operating in Michigan, under which National acquired as a holding company all the stock of the two telephone companies. The telephone companies needed a substantial financial investment in their facilities, so National undertook certain capital improvements.

On September 30, 1976, Northern Telephone Company filed a request for the Michigan Public Service Commission's approval of the borrowing of funds to finance the improvements. On February 2, 1977, Northern Telephone Company filed a second petition with the Michigan Public Service Commission, this time seeking approval of a $47,000 annual rate increase.

Plaintiffs allege that thereafter, Northern Telephone Company and Shapley were subjected to maliciously motivated abuse of the regulatory process by defendants-appellees, members of the Michigan Public Service Commission and the commission itself, with the intended result of destroying plaintiffs' property and business. According to plaintiffs' complaint, defendants intentionally delayed action on plaintiffs' petitions for unreasonable lengths of time without regulatory justification. Additionally, defendants allegedly asked the commission's auditor to falsify his calculations in order to defeat plaintiffs' request for a rate increase. When the auditor refused, defendants fired him. Defendants then appointed an independent appraiser to determine the value of plaintiff's property and facilities, a value used as a factor in the rate setting process. Defendants allegedly harassed the appraiser and constrained him to substantially understate the value. Moreover, plaintiffs allege, defendants intentionally caused the disruption of telephone service to plaintiffs' customers by physically destroying plaintiffs' lines and other equipment and then aggressively solicited public criticism and complaints from plaintiffs' customers about plaintiffs' telephone service. Finally, plaintiffs allege that defendants intentionally caused plaintiffs' costs and expenses incurred in the regulatory proceeding to be unjustifiably increased to more than $200,000 for the purpose of destroying plaintiffs' ability to provide telephone service to their customers.

II.

On May 4, 1984, plaintiffs filed this action under 42 U.S.C. § 1983, alleging that defendants had, under color of state law, deprived plaintiffs of their property without due process of law, and under section 1985(3), alleging that defendants had conspired to deprive plaintiffs of equal protection and due process. The named defendants in the suit are the Michigan Public Service Commission and four present and past members of the commission. By this suit, plaintiffs sought $5,000,000 in damages. Defendants moved to dismiss the complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted. After a hearing on the motion, the District Court granted the motion in part.

The District Court ruled that the eleventh amendment barred the plaintiffs' action against the Michigan Public Service Commission and against the commissioners in their official capacities. The District Court judge further ruled that if plaintiffs' action against the commissioners attempted to reach them in their individual capacities, the due process claim should be dismissed as required by *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Lastly, the judge determined, *sua sponte,* that he should abstain from exercising jurisdiction over this action and dismissed any remaining claims under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981).

### III.

At oral argument plaintiffs' counsel admitted that the District Court properly dismissed the claims against the Michigan Public Service Commission and any claims against the commissioners in their official capacity. Plaintiffs do not appeal the District Court's order in this respect, and we therefore state no opinion on the eleventh amendment issue.

### IV.

Plaintiffs' appeal centers mainly around the District Court's dismissal of their individual-capacity § 1983 claim against the commissioners alleging the deprivation of a property interest without procedural due process. Plaintiffs do not allege a taking under the fifth amendment, a seizure of property under the fourth amendment, or any other claim incorporated by the fourteenth amendment's due process clause. This then is simply a § 1983 damage suit for deprivation of property without procedural due process. In *Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984), this Court dealt with another such suit and held:

> in section 1983 damage suits for deprivation of property without procedural due process the plaintiff has the burden of pleading and proving the inadequacy of state processes, including state damage remedies to redress the claimed wrong.

721 F.2d at 1063. This requirement was imposed under the authority of *Parratt v. Taylor, supra,* and the Supreme Court applied a similar requirement a year after *Vicory* in *Hudson v. Palmer, supra.*

Plaintiffs failed to plead the inadequacy of state processes. On appeal they advance two arguments relevant to this point. First, plaintiffs argue that the requirement of showing the inadequacy of state remedies, which grew out of *Parratt,* applies only to deprivations caused by random and unauthorized acts of misconduct, as opposed to the alleged conspiratorial acts involved in the case at bar where the alleged conspirators are the public officials whose duty it was to see that plaintiffs were not denied due process. Plaintiffs advance no authority for this contention. In *Vicory* the Court rebuffed a similar attempt to distinguish *Parratt.*

> As we read *Parratt,* the principle being applied does not turn on the question of whether the claimed constitutional tort affecting property is caused by intentional conduct or negligent conduct[1] or is based on strict liability. Nor does it matter whether the writ at common law would be in detinue (action for wrongful detention of a chattel by a bailor), trespass *de bonis asportatis* (action for carrying away plaintiff's chattels), trespass on the case (roughly speaking, an action for negligence) or a motion in a criminal case for return of property held as evidence. The reasoning of *Parratt* appears to extend at least to all section

1. The Supreme Court recently closed the possibility of a § 1983 procedural due process case based on negligent conduct. *Daniels v. Williams,* — U.S. —, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* — U.S. —, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

1983 cases claiming a procedural due process injury to a property interest....[2]

721 F.2d at 1065.

Plaintiffs next argue that any existing state law remedies are per se inadequate because state law clothes the commissioners in absolute immunity from liability in a suit for damages based on the commissioners' official conduct. In *Hudson v. Palmer*, the Supreme Court dealt with a similar contention. The Court examined state law on the immunity question and determined that the defendant would not be entitled to sovereign immunity. 104 S.Ct. at 3205. The Supreme Court of Michigan recently addressed the sovereign immunity issue in some detail. *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641 (1984). In regard to the question of immunity of government officials, the court held:

> We therefore hold that judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their judicial, legislative, or executive authority. Lower level officials, employees, and agents are immune from tort liability only when they are
>
> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
>
> 2) acting in good faith; and
>
> 3) performing discretionary, as opposed to ministerial acts.
>
> Under this test, no individual immunity exists for *ultra vires* activities.

420 Mich. at 633–34, 363 N.W.2d at 667–68.

The defendant commissioners are not "highest executive officials" entitled to absolute immunity against claims such as the ones here for malicious destruction of property. Therefore, as is the case with other lower level state officials, the commissioners are immune from tort liability under state law only if, among other things, the commissioners' acts giving rise to potential liability were committed in good faith. Plaintiffs allege that defendants acted with malice and an intent to ruin plaintiffs' business and to deprive them of property. If plaintiffs were to prove their allegations in state court, the requirement of good faith action would defeat the defendant commissioners' claim to individual immunity. We are, therefore, of the opinion that the individual defendants would not enjoy sovereign immunity if plaintiffs pursued the remedies afforded by state procedures. It may be that plaintiffs would not be entitled, under state law, to the same relief potentially available in an action brought under Civil Rights Act. Nevertheless, it has long been recognized that the fact that state procedures would not afford relief identical to that sought in the civil rights action does not make those procedures constitutionally inadequate. *Parratt v. Taylor*, 451 U.S. at 544, 101 S.Ct. at 1917; *Hudson v. Palmer*, 104 S.Ct. at 3204.

In short, Michigan law presents a variety of procedures to redress the wrongs that plaintiffs assert. Not only could plaintiffs have taken an appeal from the regulatory proceedings before the Public Service Commission, but they could have brought a state law action in tort or restitution, not to mention seeking one of the different extraordinary writs available to force the commissioners to cease intentionally acting outside their authority. Plaintiffs failed to show that these available procedures did not afford the process that is due under the fourteenth amendment.

## V.

The District Court did not deal specifically with plaintiffs' equal protection claim brought under § 1985(3). Nevertheless, it appears clearly from the record that this

2. This requirement has also been extended to § 1983 procedural due process cases involving liberty interests. *Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985) (en banc); cases cited *supra* note 1 (apparently extending this requirement *sub silentio*).

claim will not lie, and we affirm the dismissal of the claim.

Plaintiffs allege that defendants denied them equal protection by classifying all telephone companies operating in Michigan according to size and then intentionally discriminating against the small telephone companies. In *Browder v. Tipton,* 630 F.2d 1149 (6th Cir.1980), this Court held that the "equal protection of the laws" language of § 1985(3) protected only the "so-called 'discrete and insular' minorities that receive special protection under the Equal Protection Clause because of inherently personal characteristics." 630 F.2d at 1150. Additionally, "[s]ection 1985(3) clearly does not reach all torts or equal protection violations measured by the rationality test." 630 F.2d at 1159. Small telephone companies are not members of a discrete and insular minority of the sort that has traditionally received special protection under the suspect classification analysis of the fourteenth amendment. We therefore conclude that plaintiffs' § 1985(3) claims do not state a claim upon which relief can be granted.[3]

## VI.

Accordingly, we affirm the District Court's dismissal of all claims involved in this action.

3. At oral argument, plaintiffs' counsel maintained that the equal protection claim was brought under § 1985(3) only. We therefore need not consider whether the above holding would also apply to an equal protection claim asserted under § 1983. Likewise, we state no opinion on the District Court's dismissal of the claims on alternative grounds of abstention and comity.