HURON VALLEY HOSPITAL, INC., A Michigan non-profit corporation, and Martin Trepel, Plaintiff,

v.

CITY OF PONTIAC, a Michigan municipal corporation; City of Pontiac Hospital Building Authority, a Michigan municipal corporation; Pontiac Osteopathic Hospital, a Michigan non-profit corporation; Sisters of Mercy Corporation, a Michigan non-profit corporation; Comprehensive Health Planning Council of Southeastern Michigan, a health systems agency; North Oakland County Planning Steering Committee, a planning group under the auspices of Greater Detroit Area Health Council, Inc., a Michigan corporation; United States Department of Health and Human Services, an executive agency of the United States; Margaret Heckler, as Secretary of the Department of Health and Human Services; Bailus Walker, Jr.; Maurice S. Reizen, M.D.; Herman A. Ziel, M.D.; Richard Reihmer: Paul Masseron, and Terence E. Carroll, Defendants.

No. 78–72970.

United States District Court, E.D. Michigan, S.D.

May 26, 1988.

Cohen, Milstein & Hausfeld by Jerry S. Cohen, Ann C. Yahner, Washington, D.C., Keller, Thoma, Schwarze, Schwarze, Dubay & Katz, P.C. by Anthony J. Heckemeyer, Detroit, Mich., for plaintiff Huron Valley Hosp., Inc.

Russell & Dlugokinski by Dennis Dlugokinski, Berkley, Mich., for plaintiff Martin L. Trepel, D.O.

Dickinson, Wright, Moon, Van Dusen & Freeman by Kenneth J. McIntyre, Barbara Hughes Erad, Claudia Rast, Detroit, Mich., for defendants Maurice S. Reizen, M.D., Richard Reihmer, Bailus Walker, Jr., Ph.D., Herman A. Ziel, Jr., M.D.

Miller, Canfield, Paddock & Stone by Larry J. Saylor, Detroit, Mich., for defendants City of Pontiac, City of Pontiac Hosp. Bldg. Authority.

Dykema, Gossett, Spencer, Goodnow & Trigg by Roger K. Timm, Detroit, Mich., for defendants Pontiac Osteopathic Hosp., Crittenton Hosp.

Charles Sorenson, Dept. of Justice, Civil Div., Washington, D.C., for defendants

U.S. Dept. of Health and Human Services Margaret Heckler.

Long, Preston, Kinnaird & Avant by Grady Avant, Jr., Detroit, Mich., for defendants North Oakland County Planning Steering Committee Greater Detroit Area Health Council, Inc.

Maxwell, Smith, Hanson and Mulvoy by Robert A. Maxwell, Bloomfield Hills, Mich., for defendants Sisters of Mercy Corp.

Riley and Roumell by Timothy M. Guerriero, Detroit, Mich., for defendants Comprehensive Health Planning Council of Southeastern Michigan, Paul Massaron, Terence E. Carroll.

### OPINION

GILMORE, District Judge.

With this opinion, the saga of the Huron Valley Hospital comes to an end. After more than ten years of litigation and numerous published opinions in the United States District Court and the United States Court of Appeals,[1] cross-motions for summary judgment have been filed by plaintiff[2] and the four remaining individual defendants: Maurice Reizen, Bailus Walker, Jr., Herman Ziel, and Richard Reihmer. For the reasons stated in this opinion, defendants' motion is granted, and plaintiff's motion for summary judgment of liability is denied.[3]

It is not necessary in this opinion to detail the lengthy and exhaustive history of this case. That has been done in other opinions, cited in the margin. However, a brief review of the hierarchy within the Michigan Department of Public Health is helpful in understanding these motions.

The highest level in the Department is the Director. Defendant Reizen was Director from 1970 to 1981. Defendant Walker was Director from 1981 to 1983. Directly beneath the Director are several bureaus, including the Bureau of Health Care Facilities. Defendant Ziel was Chief of the Bureau from 1966 to 1984. The next lower level consists of several divisions, including the Division of Health Facilities Planning and Construction. Defendant Reihmer was Chief of that division from 1969 to 1978.

Plaintiff's application for a Certificate of Need (CON) was first reviewed and analyzed in Reihmer's Division, and then worked its way up through Ziel's Bureau, and finally to the Director, where approval was necessary for the issuance of a CON.

### I

The Court finds dispositive, among the numerous issues raised, the question of whether the adequate state remedy doctrine applies in this case. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *cf. Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). On these grounds, the Court will enter judgment for defendants.

Defendants claim that the Court must dismiss the action on the strength of *Parratt* because plaintiff has failed to plead,

---

**1.** *See: Huron Valley Hospital v. City of Pontiac*, 466 F.Supp. 1301 (E.D.Mich.1979); *Huron Valley Hospital v. City of Pontiac*, 666 F.2d 1029 (6th Cir.1981); *Huron Valley Hospital v. City of Pontiac*, 585 F.Supp. 1159 (E.D.Mich.1984); *Huron Valley Hospital Inc. v. City of Pontiac*, 612 F.Supp. 654 (E.D.Mich.1985); *Huron Valley Hospital v. City of Pontiac*, 792 F.2d 563 (6th Cir. 1986); and *Huron Valley Hospital, v. City of Pontiac*, 650 F.Supp. 1325 (E.D.Mich.1986.) A detailed statement of facts is found in *Huron Valley Hospital v. City of Pontiac*, 585 F.Supp. 1159 (1984).

**2.** This opinion will refer to Huron Valley Hospital and Martin Trepel collectively as one plaintiff.

**3.** Plaintiff's complaint also alleges a conspiracy to exclude plaintiff from the market in violation of the Sherman Act. Plaintiff's action as against the other defendants is presently on appeal to the Sixth Circuit from this Court's January 1987 order granting summary judgment for the other defendants on both the antitrust and § 1983 allegations. In August 1987, the parties now before the Court entered a stipulation and order holding in abeyance all conspiracy claims, essentially with the understanding that those claims will stand or fall depending on the Sixth Circuit's decision in the pending appeal. Thus, all that remains before this Court are plaintiff's claims of procedural due process violations under § 1983 against the four former MDPH officials.

and, after extensive discovery, produce sufficient evidence to demonstrate the inadequacy of state remedies for the wrongs it alleges against these defendants. Their point is that plaintiff's action is nothing more than a damage action without constitutional import that should have been brought in state courts. They contend that, at this stage of the litigation, it is clear the plaintiff does not challenge an "established state procedure," thus making the *Logan* exception to the *Parratt* doctrine inapplicable.

Defendants claim that this case is similar to *National Communication Systems, Inc. v. Michigan Public Service Commission*, 789 F.2d 370 (6th Cir.), *cert. denied* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986).

In that case, the § 1983 plaintiffs alleged that actions of members of the Michigan Public Service Commission had caused plaintiffs to suffer unjustifiable delay and increased expenses in the regulatory proceedings necessary to gain the Commission's approval for plaintiffs to borrow funds meant to finance improvements and to effect a rate increase. Specifically, plaintiffs alleged malicious abuse of the regulatory process by, *inter alia*, defendants requesting the Commission auditor to falsify certain calculations, delaying proceedings without justification, and intentionally disrupting telephone service to plaintiffs' customers by physically destroying plaintiffs' lines. The court dismissed for failure to plead inadequacy of state remedies, finding *Parratt* applicable. Plaintiffs claimed their allegations of conspiracy made *Parratt* inapplicable. The court rejected that theory on grounds that the adequate state remedy doctrine does not turn on whether the conduct alleged is negligent or intentional. As for whether there existed an adequate state remedy for the ultra vires acts that plaintiffs alleged commission members had committed, the court said:

> In short, Michigan law presents a variety of procedures to redress the wrongs that plaintiffs assert. Not only could plain-

tiffs have taken an appeal from the regulatory proceedings before the Public Service Commission, but they could have brought a state law action in tort or restitution, not to mention seeking one of the different extraordinary writs available to force the commissioners to cease intentionally acting outside their authority. Plaintiffs failed to show that these available procedures did not afford the process that is due under the fourteenth amendment.

*Id.* at 373.

Defendants suggest a number of state remedies plaintiff could have pursued, and argue that the potential applicability of state immunity law for defendants under *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641 (1984), is irrelevant to the § 1983 analysis. They also contend, however, that taking plaintiff's allegations as true, defendants would not qualify for immunity under *Ross*.

On the other hand, plaintiff very simply argues that the *Parratt* doctrine is not applicable because plaintiff is challenging "established state procedures." Plaintiff claims that the facts reveal not a mere isolated wrongful act of a state official, but a manifestation of a systematic bias in favor of existing facilities on the part of defendants. Thus, plaintiff concludes, it is not fatal to its action that plaintiff failed to plead inadequacy of state remedies. In the alternative, plaintiff contends that there exists no adequate state remedy to redress its injuries, pointing out that in the state court proceedings challenging the denial of a CON plaintiff was unable to assert a claim for monetary damages. It also argues that, even after *Ross*, which purported to clarify immunity law in Michigan, it is not at all clear whether plaintiff could sue defendant for damages in state court.

## II

In an earlier opinion,[4] this Court denied defendants' motion to dismiss the § 1983 claim, finding the plaintiff's complaint was sufficient without the necessity of proving

4. *Huron Valley Hospital v. City of Pontiac*, 612   F.Supp. 654 (E.D.Mich.1985).

the inadequacy of state remedies. This Court contrasted the instant case with the mere negligent loss of a prisoner's hobby kit that was alleged in *Parratt*.

■ After that opinion, the Supreme Court held, in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), that negligent deprivation does not trigger due process protection. Thus, it is now clear that the proper focus in determining whether the adequate state remedy doctrine applies is on whether the case is one of random and unauthorized conduct, in which case *Parratt* applies, or whether instead the alleged wrongs were the result of established state procedures, in which case *Logan* applies and it is unnecessary to demonstrate the inadequacy of state remedies.

In addition to this clarification of the law, several cases have been handed down in this circuit that define more precisely the contours of the adequate state remedy doctrine. Additionally, plaintiff has now eliminated all conspiracy allegations from its complaint.

Together these considerations lead the Court to conclude that the plaintiff's § 1983 actions against these four defendants is indeed subject to the *Parratt* doctrine, and must be dismissed because the state provides remedies to redress plaintiff's injury, and afford plaintiff due process.

■ The adequate state remedy doctrine is well summarized in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The gist of the doctrine is that, "[T]he Due Process Clause of the Fourteenth Amendment is not violated ... provided that the state makes available a meaningful postdeprivation remedy." *Id.* at 531, 104 S.Ct. at 3202. However, a rationale for applying the doctrine exists only: (1) where the deprivation occurred under circumstances requiring quick state action or where the state could not have predicted the deprivation and, therefore, was precluded from making any pre-deprivation process available; and (2) where there exists some meaningful post-deprivation process under state law. *Hudson*

makes it clear that the central distinction is between random and unauthorized conduct, to which the *Parratt* doctrine applies, and established state procedure that under *Logan* is exempt from the *Parratt* doctrine:

Two Terms ago, we reaffirmed our holding in *Parratt* in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 [102 S.Ct. 1148, 71 L.Ed.2d 265] (1982), in the course of holding that postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action.

... The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply "impracticable" since the state cannot know when such deprivations will occur....

*Hudson, supra* at 532–33, 104 S.Ct. at 2303 (footnote omitted).

In *Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985) (*en banc*), the court further elaborated on the *Logan* exemption from the *Parratt* doctrine. It said:

In *Logan v. Zimmerman Brush Co.*, the Supreme Court emphasized that *Parratt v. Taylor* applies only to unauthorized acts by persons acting under color of state law and does not apply to a case where a plaintiff is deprived of property under an "established state procedure" without adequate predeprivation procedural safeguards. This is a logical limitation on *Parratt v. Taylor* because, where the action is taken pursuant to such established procedures, there is an opportunity to provide procedural process before the act occurs....

*Id.* at 583.

And, in *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 199 (6th Cir.1987), the court stated, the " 'established state procedure' in *Parratt* refers to the *mechanism* that effects a deprivation or contributes to cause a deprivation ..." (emphasis added).

Recently the Sixth Circuit has affirmed dismissal of an action under the *Parratt* doctrine on facts very similar to the instant case. *See National Communication Systems, Inc. v. Michigan Public Service Commission, supra.*

Other cases leading to the conclusion that the *Parratt* doctrine applies here include *Kumar v. Marion County Common Pleas Court,* 704 F.2d 908 (6th Cir.1983), and *Vinson, supra.*[5]

In *Kumar,* the plaintiff alleged that a divorce referee, who was not an attorney had deprived him of his 14th Amendment due process rights by hearing his divorce action in violation of state law that required the divorce referee to be an attorney. The court dismissed the action, holding that it could find no infringement of any right guaranteed to Kumar by the Constitution. It commented that plaintiff's rights were adequately protected under state law since he was able to and did take appeals:

> Like *Parratt,* this case is not one where plaintiff alleges a deprivation as a result of established state procedure. Rather, Kumar's injury, if it exists, is the result of the unauthorized failure of certain state agents to follow established state law....

*Id.* at 910.

In *Vinson,* the court granted summary judgment for defendant because plaintiff did not argue that state remedies were inadequate, and it was not a case where "established state procedure effected deprivation." In *Vinson,* the plaintiff alleged that she was deprived of liberty without procedural due process when she was falsely imprisoned for 10 days as the result of her failure to obey a summons that was technically invalid because the state official who had procured it had failed to do so by following established state procedure. The court observed:

> Plaintiff has alleged only that she was deprived of a liberty interest because es-

tablished state procedures were not followed, not that the established state procedure effected a deprivation. The state could not have predicted that the established procedure would not be followed and was in no position to provide predeprivation process because Ms. Hornsby's procurement of the allegedly invalid summons, which resulted in the alleged false imprisonment, was a random and unauthorized act. "[W]here the wrongful act is not sanctioned by any established procedure, and [where] state law provides a means for the plaintiff to be made whole for his loss occasioned by the wrongful act, there has been no denial of procedural due process because the state action is not necessarily complete until the termination of the state's postdeprivation remedy." *Yates v. Jamison,* 782 F.2d 1182, 1184 (4th Cir.1986). Therefore, the presence of an adequate postdeprivation remedy required summary judgment on plaintiff's false imprisonment claim against Ms. Hornsby.

*Id.* at 199 (Footnote omitted).

■ The Court agrees with defendants that, as in *National Communications System supra,* the adequate state remedy doctrine applies in this case, and plaintiff could have pursued state remedies to recover for the damages it alleges in this federal complaint. Most notable among the potential remedies available to plaintiff is an action under the Michigan state constitution. Recently, in *Smith v. Department of Public Health,* 428 Mich. 540, 544, 410 N.W.2d 749 (1987), *cert. granted* —— U.S. ——, 108 S.Ct. 1466, 99 L.Ed.2d 696 (1988), the Michigan Supreme Court held, *inter alia,* that "A claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases." Specifically, the Court sanctioned recognition of a potential "*Bivens*-style remedy" for violation of the equal protection and due process provisions

---

5. The Court does not feel *Spruytte v. Walters,* 753 F.2d 498 (6th Cir.1985), *cert. denied* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986), applies in this case. Plaintiff's reliance upon it is misplaced because the Court pointed out that the deprivation of Spruytte's protected interest was caused by conduct pursuant to established state procedure. Such is not the case here.

of the Michigan state constitution.[6]

Plaintiff's § 1983 action against these four defendants, with the conspiracy allegations eliminated, amounts to nothing more than allegations of injury as "the result of the unauthorized failure of certain state agents to follow established state law ..." *Kumar, supra; Vinson, supra.* Plaintiff seeks a remedy for injuries caused by defendants' use of criteria in evaluating plaintiff's application for a CON that were *not* part of the established state procedure codified in the Michigan certificate of need law.

Here, while it is undisputed that the application of criteria favoring the application for a CON by an existing hospital over an application by a new hospital, such as plaintiff, violates the CON law, nonetheless it is also undisputed that the plaintiff was the first "from the ground up" hospital to apply for a CON under Michigan's new CON statute. No evidence has been submitted indicating that the application of such unpromulgated criteria was in fact a part of "established state procedure." [7]

In *Hudson, supra,* the Supreme Court indicated application of the adequate state remedy doctrine is appropriate where there exists some meaningful post-deprivation process under state law, and the deprivation occurred under circumstances where the state could not have predicted the deprivation, thus precluding it from making any pre-deprivation process available. As indicated above, the Court is convinced plaintiff had a meaningful post-deprivation remedy under Michigan law.

Plaintiff contends that the Michigan governmental immunity doctrine set forth in *Ross, supra,* precludes ruling that plaintiff had an adequate state remedy. This argument lacks merit for several reasons. First, the court in *National Communication Systems, supra,* encountered an identical argument, and after concluding that defendants would not be entitled to *Ross* immunity, further commented:

It may be that plaintiffs would not be entitled, under state law, to the same relief potentially available in an action brought under Civil Rights Act. Nevertheless, it has long been recognized that the fact that state procedures would not afford relief identical to that sought in the civil rights action does not make those procedures constitutionally inadequate.

*Id.* at 373.

Second, in addition to implying a right of action under the Michigan state constitution in *Smith, supra,* the Michigan Supreme Court held that "Where it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available in a state court action." *Smith,* 428 Mich. at 544, 410 N.W.2d 749.

Third, as this Court earlier recognized, "[P]laintiff alleges that these defendants acted ultra vires...." *Huron Valley Hospital,* 612 F.Supp. at 662. However, in *Ross,* after listing the prerequisites for immunity from tort liability for lower-level officials, employees, and agents, the state supreme court explicitly stated, "Under this test, no individual immunity exists for *ultra vires* activities ..." *Ross, supra,* 420 Mich. at 634, 363 N.W.2d 641. Finally, arguably even were *Ross* immunity held to defeat plaintiff's right to a remedy under state law, that does not necessarily mean that plaintiff has a right of action under § 1983. The Supreme Court has not yet

---

**6.** Other possible remedies include a tort action, for example, for tortious interference with prospective advantage, either filed separately in the circuit court or together with the administrative appeal or a damage action filed in the Court of Claims. *See National Communication System, supra,* at 373.

**7.** Thus, the apparent inconsistency between Reihmer's August 1986 affidavit stating "These considerations were applied to all applicants between 1974 and September 1978, the end of my tenure with the division, not just to Huron Valley Hospital's application ..." and his August 1987 affidavit stating that "the three considerations were applied to all applicants between 1974 and 1978 when and if the policies were applicable to the certificate of need application before the Michigan Department of Public Health ...", while unsettling, is legally insignificant to the issue of whether plaintiff is challenging an "established state procedure."

decided this issue, but Justice Stevens cogently expressed the theory in his concurring opinion in *Daniels v. Williams,* 474 U.S. 327, 342, 106 S.Ct. 662, 680, 88 L.Ed.2d 662 (1986):

> Those aspects of a State's tort regime that defeat recovery are not constitutionally invalid, so long as there is no fundamental unfairness in their operation.... [t]he mere fact that a State elects to provide some of its agents with a sovereign immunity defense in certain cases does not justify the conclusion that its remedial system is constitutionally inadequate....

Even so, it is this Court's opinion that *Ross* immunity would not defeat plaintiff's available remedies under state law.

### III

For the reasons stated above, this Court concludes that plaintiff's complaint against these four defendants must be dismissed for failure to plead and prove the inadequacy of state remedies to redress plaintiff's injuries allegedly caused by defendants' failure to afford plaintiff due process of law. Plaintiff does not challenge "established state procedure," and therefore is not exempted from the *Parratt* doctrine under *Logan.*

The Court is of the firm conviction that the availability of state remedies requires a finding that the instant case does not rise to the level of a § 1983 action maintainable in federal court. To allow this case to proceed would potentially jeopardize every decision of a state agency rendering a decision adverse to an applicant for licensing under state law. It is better for the federal court to stay its hand in cases such as this where the Court finds that under state law a state court could grant a remedy for the injury plaintiff alleges. That is precisely the situation in this case. Therefore, the Court grants defendants' motion, and dismisses plaintiff's complaint.